```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
TRACEY JONES, individually and on behalf of   :
all others similarly situated,                :
                            Plaintiff,        :
                                              :   OPINION AND ORDER
v.                                            :
                                              :   20 CV 8463 (VB)
ORGAIN, LLC,                                  :
                            Defendant.        :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Tracey Jones brings this putative class action against defendant Orgain, LLC, alleging claims for violation of Sections 349 and 350 of New York's General Business Law ("GBL"), negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, fraud, and unjust enrichment.

Now pending is defendant's motion to dismiss the first amended complaint ("FAC") pursuant to Rule 12(b)(6).  (Doc. #19).

For the following reasons, the motion to dismiss is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the FAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges defendant "manufactures, distributes, markets, labels and sells milk protein shakes," including a "Clean Protein, Grass Fed Protein Shake, Vanilla Bean Flavor" (the "product").  (Doc. #18 ("FAC") ¶ 1).  Images of the front and back of the product appear as

follows:

 

(FAC ¶¶ 3, 4).

Plaintiff claims that although the product is labeled as "Vanilla Bean Flavor," suggesting the product contains real vanilla, the product does not disclose that it contains artificial vanilla flavoring. Plaintiff further alleges the product's ingredient list on the side of the packaging lists neither vanilla, vanillin, nor "artificial" vanilla or flavor. It does list as an ingredient "natural flavors." According to plaintiff, this makes unclear the source of the vanilla flavoring used in the product. The ingredient list is pictured below:

**Ingredients:**
FILTERED WATER, GRASS FED MILK PROTEIN CONCENTRATE, ORGANIC AGAVE, NATURAL FLAVORS, ORGANIC HIGH OLEIC SUNFLOWER OIL, VEGETABLE GLYCERIN, CELLULOSE, SUNFLOWER LECITHIN, SODIUM POLYPHOSPHATE, MAGNESIUM PHOSPHATE, POTASSIUM CITRATE, TRICALCIUM PHOSPHATE, POTASSIUM CHLORIDE, SEA SALT, GELLAN GUM, MONK FRUIT EXTRACT, ORGANIC STEVIA, ORGANIC LOCUST BEAN GUM

(FAC ¶ 8).

Plaintiff alleges the product's labeling is misleading in two respects. First, plaintiff alleges use of the phrase "Vanilla Bean Flavor" on the packaging is misleading because laboratory analysis of the product indicates it actually only contains "a trace or de minimis amount of vanilla, boosted by synthetic vanillin from wood pulp or petroleum derivatives." (FAC ¶ 64). According to plaintiff, the lack of qualifying terms regarding "Vanilla Bean Flavor"—such as if the packaging indicated the product contained artificial vanilla flavor—is likely to mislead reasonable consumers.

Second, plaintiff alleges the "description of the Product as 'Clean'" is misleading, because consumers associate use of the word "Clean" with products that "are free from artificial ingredients and other ingredients consumers find undesirable," such as "synthetic, artificial ingredients which can have a detrimental effect on health." (FAC ¶¶ 7, 136). According to plaintiff, the product contains the following artificial and synthetic ingredients: sodium polyphosphate, tricalcium phosphate, magnesium phosphate, potassium citrate, potassium chloride, cellulose, and gellan gum.

Plaintiff claims she had expected a vanilla taste from the product, she expected such vanilla taste would come exclusively or predominantly from vanilla beans or vanilla extract, she did not expect the product to taste of vanillin from artificial vanilla flavors, and she expected the product would not contain "synthetic, artificial ingredients which could pose risks to health." (FAC ¶ 118). She further claims she would have either declined to purchase the product or would have paid less for it had the product not included the allegedly deceptive labeling.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.   New York General Business Law Claims

Defendant argues plaintiff fails to state a claim under GBL Sections 349 and 350 because she has not plausibly alleged a reasonable consumer would find the product's labeling materially deceptive or misleading.

The Court agrees.

A.   "Materially Misleading" Standard

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015).

An alleged act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Orlander v. Staples, Inc., 802 F.3d at 300. Plaintiff must do more than "plausibly allege that a label might conceivably be misunderstood by some few consumers." Jessani v. Monini N. Am. Inc., 744 F. App'x 18, 19 (2d Cir. 2018) (summary order). Rather, the operative question is whether a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id.

In certain cases, whether a product's packaging is materially misleading can be determined as a matter of law. Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam). "[I]n determining whether a reasonable consumer would have been misled by a

5

particular advertisement, context is crucial." Id. at 742. "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." Id. In other words, courts assess "each allegedly misleading statement in light of its context on the product label or advertisement as a whole," contemplating "the entire mosaic . . . rather than each tile separately." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y. 2015).

B.   Analysis

1.   "Vanilla"

Plaintiff fails plausibly to allege the product's labeling was deceptive. Nowhere on the packaging does defendant promise that the product is flavored with vanilla from an exclusive source or even mainly from a certain source. The front label simply indicates the beverage is vanilla flavored. Indeed, numerous courts have similarly concluded with respect to comparable claims about vanilla-flavored products that "reasonable consumers associate the word 'vanilla' with a flavor, not an ingredient." Pichardo v. Only What You Need, Inc., 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020) (vanilla-flavored protein drink); see also, e.g., Eric Parham, v. ALDI, Inc., 2021 WL 4296432, at *4 (S.D.N.Y. Sept. 21, 2021) (vanilla almond milk product); Garadi v. Mars Wrigley Confectionery US, LLC, 2021 WL 2843137, at *3 (E.D.N.Y. July 6, 2021) (collecting cases) (vanilla ice cream); Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 161 (S.D.N.Y. 2021) (collecting cases) (vanilla soymilk). Indeed, unlike similar such cases, here, the packaging explicitly states it is "vanilla bean flavor." Cf., e.g., Cosgrove v. Oregon Chai, Inc., 2021 WL 706227, at *12 (S.D.N.Y. February 21, 2021) (no actionable misrepresentation pleaded where the word "Vanilla" appeared below the words "Chai Tea Latte").

Plaintiff also argues the packaging is misleading because "the Product fails to taste like vanilla because it lacks [certain] odor-active compounds." (FAC ¶ 93). But "Plaintiff present[s] no allegations that would show [her] argument regarding the taste of [] vanilla is anything but a subjective one, not shared by the reasonable consumer." Cosgrove v. Blue Diamond Growers, 2020 WL 7211218, at *4 (S.D.N.Y. Dec. 7, 2020). Indeed, differences in products' vanilla flavoring profile are myriad and may be intentional. See Steele v. Wegmans Food Markets, Inc., 472 F. Supp. 3d 47, 50 n.1 (S.D.N.Y. 2020) ("These [vanilla] flavoring packages often are carefully developed by specialized flavor suppliers, with their proprietary formulations kept as a trade secret."). Accordingly, plaintiff fails plausibly to plead the packaging is misleading or deceptive because the product does not taste like vanilla.

    2.    "Clean"

Plaintiff's argument that use of the word "Clean" on the front of the packaging is misleading because the product contains processed, synthetic, or artificial ingredients is also unpersuasive. Plaintiff fails plausibly to allege the product packaging made any statement or representation that it contained no processed, synthetic, or artificial ingredients. Indeed, she cannot; although the back of the packaging does state "No Artificial Sweeteners," nowhere on the labeling does defendant make a sweeping representation that the product contains <u>no</u> processed, synthetic, or artificial ingredients.

Rather, plaintiff asks the Court to conclude that by using the word "Clean"—which plaintiff alleges consumers understand to mean a product that is free from artificial and synthetic ingredients—to modify the word "Protein," defendant was representing the product contained no processed, synthetic, or artificial ingredients. This theory hinges on the premise that the term "Clean" applies to the entire product, and not simply to "Protein." But the product is labeled

7

"Clean Protein," with "Clean" modifying "Protein."[2]  Plaintiff fails plausibly to allege that reasonable consumers reading the label of the product would understand "Clean Protein" to mean the whole product is "Clean."  Thus, even accepting as true plaintiff's allegation of what a reasonable consumer would understand the term "Clean" to mean, plaintiff has not plausibly pleaded that a reasonable consumer acting reasonably under the circumstances would understand defendant to be making a representation that each ingredient in the product is "Clean."

Plaintiff also asks the Court to "[s]ubstitut[e] the word 'organic' for 'clean'" to see the "absurd results promised by Defendant's front label." (Doc. #22 ("Pl. Opp.") at ECF 21).[3]  But the Court must consider the labeling at hand—not speculate what it might have said and how a reasonable consumer may have viewed the hypothetical item.  Moreover, plaintiff offers no allegation that reasonable consumers have the same expectations or draw the same conclusions about the term "Clean" as they do about "organic."

In addition, plaintiff contends that Mantikas v. Kellogg Co., 910 F.3d 633 (2d Cir. 2018), and Sharpe v. A&W Concentrate Co., 481 F. Supp. 3d 94 (E.D.N.Y. 2020), foreclose defendant's argument that the ingredient list "cure[s] deceptive advertising on the front label." (Pl. Opp. at ECF 21).  This argument is misplaced.  In Mantikas v. Kellogg Co., the Second Circuit stated, "we cannot conclude that these disclosures on the side of the box render Plaintiffs' allegations of deception implausible . . . a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in

---

[2]     Plaintiff does not argue the protein was not "Clean."  Nor does plaintiff contend the allegedly artificial and synthetic ingredients—sodium polyphosphate, tricalcium phosphate, magnesium phosphate, potassium citrate, potassium chloride, cellulose, and gellan gum—are protein.

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

8

large bold type on the front of the box."  910 F.3d at 637 (emphasis added); Sharpe v. A&W Concentrate Co., 481 F. Supp. 3d at 103.  The reasoning from Mantikas v. Kellogg Co. and Sharpe v. A&W Concentrate Co. does not apply here because plaintiff has not plausibly alleged the front of the packaging contained misleading information that needed to have been corrected.

Ultimately, as both parties acknowledge, "context is crucial."  Here, considering the context of the packaging as a whole, the Court concludes plaintiff does not plausibly allege use of the term "Clean" is likely to mislead a reasonable consumer acting reasonably under the circumstances.

Accordingly, plaintiff's claims under GBL Sections 349 and 350 must be dismissed.

III.    Plaintiff's Other Claims

Because plaintiff has failed plausibly to allege her claims under GBL Sections 349 and 350, plaintiff's claims for negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the MMWA, fraud, and unjust enrichment also fail.  These causes of action are "all premised on the same contention: Defendant's labeling of the Product is materially misleading."  Cosgrove v. Blue Diamond Growers, 2020 WL 7211218, at *3.  Because, as discussed above, plaintiff fails plausibly to plead the product's packaging is misleading or deceptive, plaintiff's other claims must also be dismissed.  See id.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #19) and close this case.

Dated: September 24, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge